UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION



FILED
SEP 24 2015
[signature] CLERK

| UNITED STATES OF AMERICA, | 3:14-CR-30138-RAL |
|---|---|
| Plaintiff, | REPORT AND RECOMMENDATION ON REMAND FOR DISPOSITION OF MOTION TO SUPPRESS |
| vs. | |
| BRANDON JERAYE TREJO, | |
| Defendant. | |

A vehicle was searched after alerts and indications from a drug dog. Inside, a duffel bag was found with a pound of methamphetamine in it. The bag also contained documents with Brandon Trejo's name on them. Trejo, who was a passenger in the vehicle, seeks to suppress this evidence. While he has standing to object to the search, because there was probable cause for it, his suppression motion must be denied.

## BACKGROUND

The facts of the case have already been set forth in this Court's initial report[1] and the District Court's opinion.[2] A brief recitation of certain salient facts though is

---

[1]See *United States v. Trejo*, No. 3:14-CR-30138, 2015 WL 4392845 at **1-3 (D.S.D. May 4, 2015) (report and recommendation).

[2]See *Trejo*, No. 3:14-CR-30138, 2015 WL 4392850 at **1-4 (D.S.D. July 15, 2015) (opinion and order).

necessary to put the issues on remand in proper context.

During the evening hours of November 14, 2014, Trooper Brian Biehl, of the South Dakota Highway Patrol, stopped a GMC Denali with Colorado license plates for speeding on U.S. Highway 18, approximately 10 miles west of Winner, South Dakota. There were five occupants in the Denali: Abraham Garsia, the driver; Trejo, the front seat passenger; Jennifer Hernandez (the vehicle owner) and an infant child, both middle row passengers; and a young boy, a passenger in the far rear row.

Garsia did not have a driver's license. His responses to Trooper Biehl's inquiries were inconsistent with what Trejo and Hernandez told the trooper. And Garsia also appeared to be quite anxious.

Given the divergent information that had been provided, Garsia's excessive nervousness and the fact that his name could not be found in multiple record checks, Trooper Biehl informed Garsia he was a drug dog handler and canvassed Garsia about whether his drug dog would indicate to the odor of drugs coming from the Denali. Garsia answered in the negative. The trooper then asked Garsia if he would consent to a search of the vehicle. Garsia refused, saying a warrant was needed from a judge.

A minute or so later, Trooper Biehl deployed his drug dog, Zara. The dog alerted to the vehicle's rear doors, increasing her breathing and making a slight head check, and proceeded to indicate two times to the vehicle's rear passenger door seam by sitting and staring at it.

2

After a sheriff's deputy arrived at the scene, Trooper Biehl began searching the interior of the Denali. While doing so, he found almost $12,000 in Hernandez's purse and a one-pound package of methamphetamine, along with several documents bearing Trejo's name, in a duffel bag. Garsia maintained that the bag belonged to Trejo, and stated this multiple times. Ultimately, Trejo was handcuffed, placed under arrest for possession of a controlled substance and taken to Winner where he was jailed.

A grand jury indicted Trejo for possession with intent to distribute a controlled substance. He moved to suppress the drugs and cash seized from the Denali and for the production of Zara's field performance, standard training and certification records. The Government resisted the motion and objected to Trejo's request for field and training records.

This Court held an evidentiary hearing and issued a report recommending that the motion be denied. The Court opined that because Trejo lacked standing to contest the vehicle search, he could not obtain copies of Zara's field, training and certification records or challenge the dog's reliability and the probable cause – based on her indications – for the search.[3]

The District Court adopted the report and recommendation in part but remanded the case for a determination as to whether Trejo had a legitimate expectation of privacy in the duffel bag and to hear evidence concerning Zara's reliability if in fact

---

[3]*See* 2015 WL 4392845 at **3-4, 6.

3

Trejo had such an interest.[4] The Court also ordered the Government to provide Trejo with the records of the dog's certifications and recent standard training, as well as the accompanying scoresheets, but not her field performance records.[5]

The Government thereafter produced the required records and scoresheets. Following the production of these documents, the Court held another evidentiary hearing to address the expectation of privacy and drug dog reliability issues. At the hearing, the parties stipulated to the Court taking judicial notice of the entire record from the prior hearing (held on April 15, 2015), including the testimony and exhibits that were stricken before and not considered as evidence.[6]

## DISCUSSION

### A. Trejo's Privacy Interest in the Duffel Bag

At the outset of the remand hearing, the Government acknowledged that Trejo had a legitimate expectation of privacy in the duffel bag seized from the Denali.[7] This being the case, Trejo has standing to challenge the basis for the search of the bag, including whether Zara was reliable enough to provide probable cause.[8]

---

[4] *See* 2015 WL 4392850 at **5-10.

[5] *See id.* at **10-11.

[6] *See* Remand Hrg. Tr. 9-11 (Aug. 27, 2015).

[7] *Id.* at 7-8; *see also id.* at 20 (determining, based on the Government's concession, that Trejo either owned or had a legitimate expectation of privacy in the duffel bag).

[8] *See Trejo*, 2015 WL 4392850 at **7-8.

## B. Zara's Reliability

An "indication by a properly trained and reliable drug dog provides probable cause for . . . the search of a vehicle."[9] Under the automobile exception to the warrant requirement, an officer with probable cause to search a vehicle may inspect any item within the vehicle that is capable of concealing the object of the search, regardless of whether the item belongs to the driver, passenger or someone else.[10]

Evidence of a drug-detection dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust the dog's indication.[11] "If a bona fide organization has certified a dog after testing his reliability in a controlled setting, the court can presume (subject to any conflicting evidence offered) that the dog's [indication] provides probable cause to search."[12] The same is true, even when there has been no formal certification, if the dog has recently and successfully completed a training program that evaluated the dog's skill at locating drugs.[13]

---

[9] *United States v. Winters*, 600 F.3d 963, 967 (8th Cir.), *cert. denied*, 562 U.S. 908 (2010).

[10] *See Wyoming v. Houghton*, 526 U.S. 295, 300-07 (1999); *United States v. Ross*, 456 U.S. 798, 823-25 (1982).

[11] *See Florida v. Harris*, 133 S.Ct. 1050, 1057 (2013).

[12] *Id.*

[13] *See id.*

5

A defendant is entitled to challenge a drug dog's reliability, whether by cross-examining the testifying officer or by introducing fact or expert witnesses.[14] If the Government comes forward with proof, from controlled settings, that the dog performs reliably in detecting drugs and the defendant does not contest the showing, then probable cause should be found.[15] But if the defendant challenges the reliability of the dog overall or of a particular indication, then the Court should weigh the competing evidence and decide the probable cause issue like any other.[16] The overarching question – found in every probable cause inquiry – is whether the facts surrounding the dog's indication, when viewed through a common sense lens, would convince a reasonably prudent person that a search would reveal contraband or evidence of a crime.[17] The dog's sniff, and resulting indication, is up to snuff when it satisfies this test.[18]

And here, Zara's did. Her credentials and accomplishments in controlled testing environments gave Trooper Biehl the requisite probable cause to search the Denali when the dog twice indicated to the back passenger door seam of it.[19]

---

[14]*See id.*

[15]*See id.* at 1058.

[16]*See id.*

[17]*See id.*

[18]*See id.*

[19]*See id.* at 1059; *United States v. Holleman*, 743 F.3d 1152, 1156-58 (8th Cir.), *cert. denied*, 134 S.Ct. 2890 (2014).

The Government introduced credible evidence of Zara's training and aptitude for finding drugs. A month and-a-half before indicating to the Denali, Trooper Biehl and Zara successfully completed the state's evaluation program and were recertified as a drug detection team.[20] Trooper Biehl and Zara, who the state had likewise certified in 2011-13,[21] worked together each month on exercises designed to hone their skills.[22] Training records show that Zara always found secreted drugs and that she performed well in her exercises.[23] And the testimony and documentary evidence presented confirmed that the dog functioned at a proficient level.

Still, Trejo attacks Zara's reliability, pointing to the difficulty the dog had in finding ecstasy, her having to be redirected at times, and Trooper Biehl cueing her. But the dog demonstrated her detection acumen in testing and evaluations done by third parties and was deft at exposing narcotics hidden in and outside of vehicles and

---

[20] *See* Mot. Hrg. Exs. 5A, 5B (April 15, 2015).

[21] *See id.* at Exs. 2, 3A, 3B, 4A, 4B.

[22] *See* Remand Hrg. Ex. 6 (Aug. 27, 2015); Mot. Hrg. Tr. 49-52 (April 15, 2015).

[23] *See* Remand Hrg. Ex. 6.

elsewhere. This record, when considered along with Zara's certifications, training, history and experience[24] is more than adequate to establish the dog's reliability.[25]

## CONCLUSION

Trejo had a legitimate expectation of privacy in the duffel bag. The Government concedes this. He thus has standing to contest the search of the bag.

Even so, Trejo cannot succeed on his suppression motion. Zara's indications were sufficient to give Trooper Biehl probable cause to search the vehicle, including the duffel bag, for contraband. The dog's detection abilities – as evidenced by her certifications and training records – made her trustworthy and a reliable source of information. No basis exists to exclude the evidence (methamphetamine and identifying documents) that was found in and seized from the bag.

## RECOMMENDATION

Accordingly, it is hereby

RECOMMENDED that Trejo's motion to suppress[26] be denied.

---

[24]*See United States v. Salgado*, CR. 12-30088(01)-RAL, 2013 WL 230217 at *4 (D.S.D. Jan. 17, 2013) ("Zara's certifications and extensive training over 10 months of scrutiny, coupled with her outstanding success in the field, made her and her indications sufficiently reliable to establish probable cause for a warrantless search of [the defendant's] car for drugs and related evidence."), *report and recommendation adopted*, 2013 WL 1348264 (D.S.D. April 1, 2013), *aff'd*, 761 F.3d 861 (8th Cir. 2014).

[25]*See Harris*, 133 S.Ct. at 1057-59; *United States v. Gonzales*, 781 F.3d 422, 430 (8th Cir.), *petition for cert. filed*, No. 14-10319 (U.S. June 22, 2015); *United States v. Gunnell*, 775 F.3d 1079, 1085 (8th Cir. 20154); *Salgado*, 761 F.3d at 867; *Holleman*, 743 F.3d at 1157-58.

[26]*See* Dkt. No. 30.

## NOTICE

The parties have 14 calendar days after service of this report to file their objections to the same.[27] Unless an extension of time for cause is obtained,[28] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[29] Objections must "identify[] those issues on which further review is desired[.]"[30]

DATED this 24th day of September, 2015.

BY THE COURT:

*[signature]*

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[27] *See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[28] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[29] *See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[30] *Arn*, 474 U.S. at 155.